UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                    Plaintiff

v.                                      Criminal Action Nos. 3:19-cr-208-RGJ
                                                          & 3:21-cr-20-RGJ

JOSEPH SAMIR ZAKHARI                                       Defendant

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

The United States alleges six counts (in two separate indictments) [1] related to obscenity, child exploitation, and enticement against Defendant Joseph Zakhari ("Zakhari"). [*Zakhari I*, DE 50]; [*Zakhari II*, DE 19]. Count 1 of the *Zakhari I* superseding indictment and of the *Zakhari II* indictment charges Zakhari with attempted online enticement of a minor on or about and between October 6, 2019, and October 8, 2019. [*Zakhari I*, DE 50 at 365]; [*Zakhari II*, DE 19 at 199]. Count 2 of both indictments charges Zakhari with attempted transfer of obscene matter to a minor. [*Zakhari I*, DE 50 at 366]; [*Zakhari II*, DE 19 at 200]. Count 3 of both indictments charges Zakhari with attempted production of child pornography. *Id.*

In advance of trial, scheduled to begin September 20, 2021, the parties have filed eight motions to exclude and motions *in limine* —six by the United States and two by Defendant Zakhari. [DE 111; DE 113; DE 115; DE 116; DE 117; DE 119; DE 125; DE 129]. Briefing is complete, and the matters are ripe. For the reasons below, the United States' Motions to Exclude Dr. Beggan [DE 113; DE 119] are **GRANTED in part** and **DENIED in part**, the United States' Motions In Limine and to Exclude Testimony of Lisa Ream [DE 115; DE 117] are **DENIED**, and

---

[1] Two criminal actions against Zakhari have been consolidated into one matter for purposes of trial. [3:19-cr-201, DE 108] ("*Zakhari I*"); [3:21-cr-20, DE 30] ("*Zakhari II*"). Within this Opinion, all docket entries will be from *Zakhari I* unless otherwise indicated.

Sara McDermott the United States' Motion *in Limine* regarding penalties [DE 116] is **GRANTED**, Zakhari's Motion to Exclude Detective Hedden [DE 111] is GRANTED in part and **DENIED in part**, Zakhari's Motion *in Limine* to exclude discussion of other electronic devices [DE 125] is **GRANTED**, and Zakhari's Motion *in Limine* about discussion of the Kik app [DE 125] is **GRANTED in part** and **DENIED in part**, and Zakhari's Motion for Leave to File a Supplement to His Response to the United States' motion regarding McDermott [DE 135] is **GRANTED** and his Supplement [DE 135-2] is accepted as filed. Zakhari is ordered to supplement McDermott's expert report as set forth in this opinion within 7 days of the entry of this order. The Court will rule on the Motion *In Limine* and to Exclude Sara McDermott [DE 125] after the United States has responded to Zakhari's Supplement [DE 135-2].

## I.  STANDARD REGARDING MOTIONS *IN LIMINE*

Federal district courts have the power to exclude irrelevant, inadmissible, or prejudicial evidence *in limine* pursuant to their inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)); *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013).  That said, the "better practice" is to defer evidentiary rulings until trial unless the evidence is clearly inadmissible on all potential grounds.  *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *Jonasson v. Lutheran Child  & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997); *Bouchard v. Am. Home Prods. Corp.*, 213 F.Supp.2d 802, 810 (N.D.Ohio 2002) (citing *Luce,* 469 U.S. at 41 n. 4).  This posture is favored so that "questions of foundation, relevancy and potential prejudice may be resolved in proper context."  *Gresh v. Waste Servs. of Am., Inc.*, 738 F.Supp.2d 702, 706 (E.D. Ky. 2010).  When this Court issues a ruling *in limine*, it is "no more than a preliminary, or advisory, opinion."  *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *Luce*, 713 F.2d at 1239).  Thus, even where a motion *in limine* is denied,

the Court may return to its previous ruling at trial "for whatever reason it deems appropriate." *Id.* (citing *Luce*, 713 F.2d at 1239). Likewise, the Court has discretion to alter or amend a prior *in limine* ruling at trial. *Luce*, 469 U.S. at 41–42.

## II.   DISCUSSION

### A.  United States' Motions

   1.  <u>Motions to Exclude Expert Testimony of James K. Beggan, Ph.D. [DE 113; DE 119]</u>

The United States moves to exclude testimony of Zakhari's expert witness, Dr. Beggan, on several grounds and requests a *Daubert* hearing.  [DE 113; DE 119].

     *a.  Background.*

Dr. Beggan is a professor in the Department of Sociology at the University of Louisville with "extensive knowledge of social and psychological behavior related to human sexuality, including interactions via the medium of internet dating. . ." [DE 113 at 882].  Zakhari asserts that he will offer testimony:

> that deception on internet dating profiles and in online dating communications is common; that nearly everyone involved with internet dating expects that their counterparts are engaging in deception; that almost half of all people specifically expect others are lying about their age.

[*Id.*]  He will also discuss research studies regarding individuals' "'deception literacy' – i.e., their degree of sophistication about expecting and being able to detect deception in online encounters." Finally, Zakhari asserts that Dr. Beggan will opine "based on his reading of Mr. Zakhari's chat transcripts, that Mr. Zakhari was a sophisticated and literate detector of deception," that he was "plainly challenging the truthfulness of the presentation of the 'boredcrbgirl' [and 'Alyssa'] persona[e]" and that "it is reasonable to conclude that Mr. Zakhari did not believe he was communicating with minors when he was interacting with the undercover personae."  [*Id.* at 882-83].

The United States first states that Zakhari failed to produce any "written reports or basis for Dr. Beggan's opinion." [DE 113 at 883]. Further, the United States represents that it was unable to locate any federal case, or any Sixth Circuit case, addressing the concept of "deception literacy" or discussing whether expert testimony on this issue is necessary. [*Id.* at 884]. The United States then asserts that "[t]he fact that not all communications on the internet are truthful is within the knowledge of laypersons[]" and therefore no expert testimony to that effect is needed. [*Id.* at 885]. The United States also objects to Dr. Beggan's testifying as to "the ultimate issue of whether Zakhari believed he was communicating with minors[.]" [*Id.*]. And, finally, the United States argues that Dr. Beggan should not be permitted to give "[e]xpert testimony pertaining to the prevalence of sending penis pictures to *adults*[.]" [DE 119 at 916] (emphasis original).

Zakhari counters:

> Dr. Beggan's proposed testimony is relevant. His comments will illuminate facts at the heart of the trial: Mr. Zakhari's communications with the undercover personae, and the transmission of an image of a penis in the course of these chats. As to the communications, a critical question concerns Mr. Zakhari's level of credulity: did he believe everything in every text message he received from the undercover personae? Dr. Beggan's testimony about modern expectations in the specific context of internet dating – the fundamental wariness with which people typically approach such communications, the readiness with which people discount the truthfulness of online dating exchanges – will help the jurors make important inferences about Mr. Zakhari's credulousness in his chats with the undercover personae.

[DE 130 at 1002-03]. Zakhari concedes that "Dr. Beggan cannot offer an opinion about whether Mr. Zakhari actually believed the undercover personae's representations[.]" [*Id.* at 1003]. As for the prevalence of adults exchanging photos of their genitals, Zakhari argues that "Dr. Beggan's expert testimony about modern adult familiarity with 'dick picks' and the common understanding about the place of such images in online dating will help the jury determine whether the images qualify as 'obscene.'" [*Id.*].

b.   *Standard.*

"Under Rule 702 of the Federal Rules of Evidence, 'a proposed expert's opinion is admissible . . . if the opinion satisfies three requirements.  First, the witness must be qualified by knowledge, skill, experience, training, or education.  Second the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue. Third, the testimony must be reliable.'"  *Burgett v. Troy-Bilt LLC*, 579 Fed. App'x 372, 376 (6th Cir. 2014) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008)). "[R]ejection of expert testimony is the exception rather than the rule." *United States v. Girod*, No. CR 5: 15-87-DCR, 2016 WL 3512159, at *2 (E.D. Ky. June 22, 2016)  (citing Fed. R. Evid. 702 Advisory Committee Note (2000 Amendment)). A court typically can resolve a *Daubert* motion without holding a hearing. *Nelson v. Tenn. Gas Pipeline Co*., 243 F.3d 244, 248-49 (6th Cir. 2001). A hearing is required only if the record is inadequate to decide the motion. See *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 393 (6th Cir. 2000).

Under Rule 401, evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and . . . [is] of consequence in determining the action." Fed. R. Evid. 401.  However, even if evidence is relevant, it may be inadmissible pursuant to the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. Fed. R. Evid. 402.  For instance, relevant evidence may be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

The United States' motion does not specifically challenge the qualifications of Dr. Beggan. Instead, it primarily disputes the relevance of Dr. Beggan's testimony and that it impermissibly

crosses into the province of the jury. The Court has reviewed the information submitted by the parties and it is sufficient information to make an initial assessment of this motion without a hearing.

c.   *Analysis.*

The issue is whether Dr. Beggan's testimony regarding deception practices in online dating is relevant, "'meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue.'"   *Burgett*, 579 Fed. App'x at 376 (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 528-29).   The Court finds this testimony is relevant to Zakhari's theory of the case, which is that he did not believe the undercover personae was a minor.   *See United States v. Gonzalez*, 140 F. App'x 170, 177 (11th Cir. 2005) ("courts generally should not prohibit a defendant from presenting a defense theory to the jury when some factual basis can support that theory"). While it may be true that laypersons generally understand that not every communication on the internet is truthful, [DE 113 at 885], the Court cannot conclude that laypersons are equipped with an understanding of online dating contexts.   Therefore, assuming the defense properly lays the foundation for Dr. Beggan's testimony (for instance, by establishing that he regularly reviews communications in online dating that involve deception practices and has expertise and identifying these deceptive types of communications in online dating), then Dr. Beggan will be permitted to discuss "modern expectations in the specific context of internet dating[.]"  [DE 130 at 1003]. This testimony may include that "deception on internet dating profiles and in online dating communications is common;" and "that nearly everyone involved with internet dating expects that their counterparts are engaging in deception." [DE 113 at 882].   Further, Dr. Beggan will be permitted to review excerpts of Zakhari's correspondences and opine that those communications could be consistent with someone attempting to lie about their age or attempting to detect deception

in online dating.  The United States will have the ability to cross-examine Dr. Beggan on this testimony.

But Dr. Beggan cannot testify for Zakhari. Under Fed. R. Evid. 704, "[a]n opinion is not objectionable just because it embraces an ultimate issue," but "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." In other words, although expert opinion may embrace ultimate issues to be decided by the jury, the expert is not permitted to draw a legal conclusion and is only permitted to state an opinion "that suggests the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue." *See Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) (noting that a court would not be permitted to "allow a fingerprint expert in a criminal case to opine that a defendant was guilty (a legal conclusion), even though we would allow him to opine that the defendant's fingerprint was the only one on the murder weapon (a fact). The distinction, although subtle, is nonetheless important."). Thus Dr. Beggan cannot testify as to what Zakhari intended or what Zakhari was thinking. He cannot testify as to the ultimate issue of Zakhari's intent and whether Zakhari believed he was communicating with minors.  This would impermissibly cross into an opinion on an ultimate issue in violation of Fed. R. Evid. 704.  Zahkari concedes that "Dr. Beggan cannot offer an opinion about whether Mr. Zakhari actually believed the undercover personae's representations; FRE 704(b) precludes this, and defense counsel's correspondence erred when it suggested otherwise." [DE 130 at 1003].

The second issue is whether Dr. Beggan can testify about "contemporary adult community standards regarding the perceived offensiveness and prurience of" penis images.  The Supreme Court has held that "[e]xpert testimony is not necessary to enable the jury to judge the obscenity

of material which, as here,[2] has been placed into evidence."[3] *Hamling v. United States*, 418 U.S. 87, 100 (1974). Indeed, the jury instructions[4] submitted by Zakhari define the term "obscene," and state that "[n]o evidence of what constitutes obscene material has been or needs to be presented. It is up to you to determine whether the material is obscene using the standard in this instructions . . ." [DE 120 at 932]. Therefore, Dr. Beggan's testimony is not necessary to aid the jury in determining whether penis photos are obscene. Thus, Dr. Beggan will not be permitted to testify about standards regarding the perceived offensiveness and prurience of penis images as that goes to the issue of whether the images were obscene. But, as with Dr. Beggan's testimony regarding deception in online dating, Dr. Beggan may testify about how common penis images are in the context of online dating as the Court does not conclude that laypersons are equipped with an understanding of online dating and it is relevant to Zakhari's theory of the case. The United States' Motions to Exclude Dr. Beggan [DE 113; DE 119] are **GRANTED in part** and **DENIED in part** as set forth above.

2. Motions *In Limine* and to Exclude Testimony of Lisa Ream and Sara McDermott [DE 115; DE 117; DE 129]

The United States moved to exclude the testimony of Zakhari's proposed witness, Lisa Ream. [DE 115; DE 117]. Thereafter, Zakhari supplemented Ream with a different proposed witness, Sara McDermott. [DE 131 at 1029]. As a result, the United States' motions pertaining to Ream are **DENIED as moot** [DE 115; DE 117]. The United States' arguments, incorporated by reference in [DE 129], will be analyzed as against McDermott.

---

[2] The United States represented at the final pretrial conference that it will introduce the allegedly obscene material and place it into evidence at trial.

[3] The Supreme Court was discussing "obscenity" under 18 U.S.C. § 1461, which is part of the same statutory scheme under which Zakhari faces charges. *Compare* 18 U.S.C. § 1461 *with* 18 U.S.C. § 1470. Therefore, the Supreme Court's conclusion is instructive as to the issue of obscenity in this matter.

[4] Zakhari cites the Seventh Circuit Pattern Instructions for this specific instruction.

a. *Background.*

Zakhari asserts that McDermott is a "Cellbrite Certified Physical Analysist." [DE 129 at 996]. Further Zakhari provides that McDermott

> will be providing summary testimony, not expert opinions, about the contents of Mr. Zakhari's cell phone; if necessary, though, she can describe the techniques and commands employed in Cellebrite to find and extract the particular information from Mr. Zakhari's phone.

[*Id.* at 996-997].

The United States first seeks exclusion of McDermott because Zakhari did not produce "written reports or [any] basis for her testimony[,]" and his disclosure of McDermott as a witness was "well past the deadline set by the Court for expert notices[.]" [*Id.* at 997]. The United States also argues while McDermott has training and experience conducting forensic examinations of digital devices, nothing in the disclosure indicates that she would be called as a witness regarding the Cellebrite extraction conducted from the defendant's cellphone or "what familiarity, if any, she has with the extraction conducted by the prosecution." [*Id.* at 998]. Finally, the United States asserts that McDermott's proposed testimony includes "improper hearsay[,]" because "Zakhari cannot introduce his own statements through other witnesses[.]" [DE 129 at 998; DE 117 at 997-98].

After the United States filed its Motions regarding McDermott, Zakhari provided the United States with her newly completed report. [DE 135-2 at 1099].[5] Specifically, Zakhari proffers that McDermott's report

---

[5] Zakhari's Motion for Leave to File a Supplement to His Response to the United States' motion regarding McDermott [DE 135] is **GRANTED** and his Supplement [DE 135-2] is accepted as filed.

summarizes stored digital files by type (number of videos, number of cookies, number of Web bookmarks, and so on) and by category (number of Mr. Zakhari's communications with all MeetMe users between October 7 and October 9, 2019, for instance). Ms. McDermott's report similarly describes the content of the MeetMe contact file in Mr. Zakhari's phone associated with the "Alyssa" persona and his phone's Kik Messenger contact for "boredcrbgirl". One section of the report discusses the creation date of images showing Mr. Zakhari's penis, and identifies at least one other person who received copies of the images.

[DE 135-2 at 1100]. Zakhari further argues that none of McDermott's proposed testimony "can be described as her subjective opinion;" because she employed objective search parameters to collect data. [*Id.*]. However, Zakhari mentions that "[i]n limited instances, Ms. McDermott's report characterizes certain groups of files; for example, the narrative advises that a review of 932 website URLs in Mr. Zakhari's phone indicated that there were 'no URLs … showing an interest in or seeking out child sexually exploitative material.'" [*Id.* at 1101].

Though Zakhari categorizes McDermott as a "Cellbrite expert[,]" [DE 135-2 at 1099], her opinions go beyond an objective review of data collected through Cellbrite. [DE 135-3]. For example, McDermott objectively identifies that the "Alyssa" persona's profile "contain[s] a user ID of 1154106397[,] . . . state[s] she is a female who is thirty-five years of age[, and] . . . contain[s] a URL that goes back to a profile picture[,]" but then McDermott opines that the profile picture is "of a female who does not appear to be an obvious minor." [*Id.* at 1102]. The majority of McDermott's expert report conclusions follow a similar pattern: presenting Cellbrite data, then providing an opinion based on that data.[6] Other statements in her report only provide her interpretation of Cellbrite data, such as her conclusion that "[a]ll parsed activity from social media

---

[6] In another instance, McDermott objectively states that the Cellbrite revealed Zakhari "communicated with approximately 190 users" on certain social media applications "between 07/28/19 and 10/08/19," then concludes that "[a]side from the communications with the undercover agent(s), no evidence that the user was communicating with minors was located." [DE 135-3 at 1102]. McDermott also discusses over one hundred thousand images from Zakhari's phone and states that there were images containing "adult pornography[,]" [*id.* at 1106], but concluded that there were no images containing "suspect child sexually exploitative material[.]" [*Id.* at 1102].

applications including Facebook Messenger, Instagram and Snapchat were reviewed and no activity was located showing an interest in or seeking out child sexually exploitative material.  In addition, nothing was located showing an interest in minors."  [*Id.* at 1103].

> b.   *Analysis.*

Under the standard set forth above in Section II.A.b above and delineated in FRE 702, the United States motion questions McDermott's qualifications as well as the relevance and reliability of her testimony.  *Burgett,* 579 Fed. App'x at 376 (quoting *In re Scrap Metal Antitrust Litig.,* 527 F.3d at 528-29).  First, as to Zakhari's disclosure, he did not disclose McDermott as an expert in child enticement investigations.  Her CV identifies that she was trained in "[d]igital forensic child exploitation investigations[,]" and has taken courses in "Forensic Focus- Solve Internet Crimes Against Children" and "Internet Evidence Finder: Finding and Analyzing Important Evidence in Child Exploitation Cases."  [DE 35-4 at 1116].  Similarly, Zakhari has not tied any of McDermott's expertise to the conclusions she reaches.  [*See* DE 135-2 at 1100-01 (stating only that "[t]hese observations incorporate a measure of Ms. McDermott's expert opinion, but it is an opinion that she has the training and experience to offer, as her curriculum vitae shows.")].

Second, several of her opinions cross into the realm of key jury issues in this matter, such as what ages the personae appeared to be through their communications and photographs.  Additionally, Zakhari's supplemental filing does not address or explain the relevance of McDermott's opinions.  *See Burgett*, 579 Fed. App'x at 376 ("the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue.").

Finally, assuming *arguendo* that she is qualified to testify as to her opinions, McDermott's report does not provide her methodology.  For example, McDermott indicates that she conducted

a "keyword search" of Zakhari's Cellbrite "extraction for various search terms commonly associated with users with an interest in and seeking out child sexually exploitative material[,]" without identifying *what* search terms she used.  [DE 135-3 at 1103].  If McDermott will be permitted to make these inferences based on her review of the Cellbrite data, the United States is – at the very least – entitled to know the search terms she employed. Similarly, McDermott reviewed Zakhari's messages in Badoo, Facebook Messenger, Instagram, and Snapchat, and states that "nothing was located showing an interest in or seeking out child sexually exploitative material. In addition, nothing was located showing an interest in minors." [DE 135-5 at 1110-114]. But McDermott does not identify what criteria she used in making this determination. Likewise McDermott reviewed the images, videos, cookies, web bookmarks, and web history, and states that she found nothing depicting child sexually exploitative material and/or nothing was located showing an interest in minors. [DE 135-3 at 1106]. But again, McDermott does not identify what criteria she used in making these determinations.

The United States has not yet replied to Zakhari's Supplemental Response about McDermott [DE 135-2].  The Court does not have sufficient information to determine the United States' motions on McDermott. The Court will rule on this motion after the United States has responded.  But in the meantime, Zakhari is ordered to supplement McDermott's expert report within 7 days of the entry of this order, by explaining how McDermott's expertise make her qualified to opine on the conclusions she reaches as well as explain the methodology and criteria and disclose any search terms she use in reaching her opinions.

3.  Motion *in Limine* Regarding Penalties [DE 116]

The United States moves *in limine* "to exclude from trial any evidence, allegation, questioning, or argument concerning punishment or penalties which may be imposed as a result of

conviction on the charges set out in the Indictments." [DE 116 at 902]. Zakhari counters that "[a]t least in cases involving mandatory minimum punishments, it is arguably wrong to say that the jury 'has no sentencing function': the verdict in such cases binds the hands of the judge," so it is misleading to instruct the jurors otherwise. [DE 134 at 1069].

While Zakhari presents an interesting and novel argument about the jury's potential role in sentencing when a charge carries a mandatory minimum, the United States' motion correctly states the current law of this Circuit. [*See* DE 116 at 904]. As the Sixth Circuit's patten jury instructions reflect, "[d]eciding what the punishment should be is [the judge's] job, not [the jury's]." [*Id.* at 902] (citing *Sixth Circuit Pattern Criminal Jury Instruction* 8.05(2) (2021)). Perhaps this framework "may be ripe for reconsideration[,]" [DE 134 at 1069], but under current precedent, it is impermissible for jurors to even consider possible punishments. *See United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999) (affirming the district court's limitation on discussion of penalties and quoting Sixth Circuit Pattern Jury Instruction 8.05(2)). The United States' Motion *in Limine* regarding penalties [DE 116] is therefore **GRANTED**.

## B.  Zakhari's Motions

### 1.  Motion to Exclude Detective Matt Hedden [DE 111]

Zakhari moves *in limine* to exclude the expert opinion of Detective Matt Hedden ("Detective Hedden"). [DE 111].

#### a.  *Background*

The United States intends to offer Detective Hedden as an expert at trial. Detective Hedden is the United States' lead investigator in this case. [DE 111 at862]. The United States' notice advises that, "[b]ased on his specialized education, training and experience (outlined more fully in the accompanying curriculum vitae)," Detective Hedden will "testify about conducting online

undercover operations focused on identifying and arresting individuals who seek to sexually exploit minors," and will also "address the social media platforms used, chatting as an investigative tool, and recognizing actions designed to groom minors." [DE 111-1; DE 111-2].

Zakhari argues that Hedden's expert disclosure was deficient, that his testimony "cannot satisfy the 'fit' and 'reliability' standards for expert testimony under Fed. R. Evid. 702 and *Daubert*[,]" that his testimony would impermissibly include an opinion as to Zakhari's "criminal knowledge or intent;" and finally that his dual role as a fact and expert witness might confuse the jury or afford his factual testimony undue weight. [*Id.* at 862-63]. Zakhari's objections primarily focus on two objections: (1) "the suggestion that Detective Hedden will provide an expert opinion about 'identifying … individuals who seek to sexually exploit minors.' The likely import of this would be a discourse about the typical acts and common characteristics of people who are child molesters: profile evidence . . .." and (2) "that Detective Hedden will describe methods for 'recognizing actions designed to groom minors' . . . the government's disclosure says nothing to identify the 'actions' supposedly 'designed to groom minors,' or what factual basis Detective Hedden might have for an opinion that Mr. Zakhari engaged in any such 'actions,' or what specific training he's had to equip him to offer any sort of expert opinion about 'grooming.'" [DE 111].

In response, the United States clarified that Hedden will not "offer opinions on several ultimate and improper issues (*e.g.*, Zakhari's character or propensity to engage in criminal activity, identifying Zakhari's actions as grooming, and the like)." [DE 132 at 1050]. The United States further argues, as to the allegedly deficient disclosures, that its "notice meets the requirements of Fed. R. Crim. P. 16(a)(1)(G)" and further that "the defense has the benefit of Detective Hedden's prior statements on most, if not all, of the topics referenced in the expert notice." [*Id.* at 1052-53]. Finally, the United States asserts that Hedden's training and experience qualifies to testify as an

expert in this matter, and that his dual role (as an opinion and fact witness) will not confuse the jury so long as they are properly instructed.  [*Id.* at 1053-55].

    *b.*    *Analysis*

Hedden's CV demonstrates his qualifications to testify as an expert "about conducting online undercover operations focused on identifying and arresting individuals who seek to sexually exploit minors[,]" as well as "the social media platforms used, chatting as an investigative tool, and recognizing actions designed to groom minors."  [DE 111-1 at 872].  Specifically, since 2015, Hedden has "investigat[ed] violations of state and federal law related to child exploitation, child pornography, and other online crimes[]" with the Kentucky Office of the Attorney General.  [DE 111-2 at 874].  He was assigned to the Kentucky "Internet Crimes Against Children" Taskforce and several of his responsibilities are directly related to the substance of his proposed testimony.  [*Id.*].  Additionally, his CV reviews extensive training (specifically, "over 2,000 hours of training with more than 800 hours related to Cyber Crimes") including several conferences and trainings about social networking, digital investigations, and crimes against children.  [*Id.* at 875-76].  "A court may find an expert qualified based on his experience alone, if the experience matches the scope of the proffered testimony on the central issue at trial."  *See Luna v. Bell*, No. 3:11-CV-00093, 2013 WL 12316066, at *3 (M.D. Tenn. Aug. 1, 2013) (citing *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 332–33 (6th Cir. 2001); *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) ("The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question").  The Court finds that Detective Hedden has sufficient experience to qualify him to testify as an expert in this matter.

As to his dual role as a fact and opinion witness, in the Sixth Circuit, "an officer may testify as a fact and opinion witness as long as the court cautions the jury about the two-headed nature of the witness's testimony." *United States v. Martinez*,k 832 Fed. App'x 432, 436 (6th Cir. 2020). The United States also represented, at the pretrial conference, that it will clearly delineate Hedden's testimony as an expert from that as a fact witness, perhaps by calling him twice as a witness – once for his expert testimony, and once for his fact testimony.  Indeed, this Court will instruct the jury about the two-headed nature of Hedden's testimony.  Therefore, Detective Hedden's dual role is permissible.

As to whether Detective Hedden may testify about identifying individuals who seek to sexually exploit minors, the Sixth Circuit has stated that "courts have condemned the use of profiles as substantive evidence of guilt . . ." *United States v. Baldwin*, 418 F.3d 575, 581 (6th Cir. 2005) (quoting United States v. Long, 328 F.3d 655, 666 (D.C. Cir. 2003)). The United States offers in its response that "[a]t no point will Detective Hedden be asked whether Zakhari's actions fit a particular profile or offer an opinion as to his guilt for the charged offenses."  [DE 132 at 1050]. The Court agrees that use of profile evidence would be inappropriate and thus Detective Hedden will not be permitted to offer profile evidence or testify that Zakhari's actions fit a particular profile.

As to whether Detective Hedden may testify about grooming, "[g]rooming" is not an element of child enticement under § 2422(b), and it appears nowhere in the Sixth Circuit's Model Jury Instructions. *United States v. Fox*, 600 F. App'x 414, 419 (6th Cir. 2015). Nonetheless, evidence about grooming may be relevant and admissible to the United States' theory of the case. *See id.* (instruction given by trial court in case involving enticement of a minor case regarding the definition of "grooming" upheld on appeal).  The United States' response states that "Detective

16

Hedden will not testify that Zakhari engaged in grooming" and the Court agrees that testimony to the ultimate issue of Zakhari's intent would be improper. But if the United States' theory of the case is that Zahkari was grooming the undercover personae for sexual activity, then Detective Hedden's testimony about the general practice of grooming is relevant and admissible. But if the United States is not presenting a theory that Zahkari was grooming the undercover persona, but rather that Zakhari wanted to engage in sexual activity with a minor, then testimony about grooming is not relevant.

Accordingly, Zakhari's Motion to Exclude Detective Hedden [DE 111] is GRANTED in part and **DENIED in part as set forth above**.

2. Motions *in Limine* About Additional Seized Electronic Devices [DE 125]

Zakhari moves *in limine* to exclude "proof that the government seized computers and other electronic storage devices from Mr. Zakhari (making an exception for proof about the seizure of Mr. Zakhari's iPhone)[.]" [DE 125 at 977].

a. *Background*

Federal agent took possession of Zakari's phone and in addition to the phone, agents seized more than twenty computers and other electronic devices capable of holding data. *Id.* Zakhari asserts that the government never returned the seized devices and never examined their contents, and thus, whatever may be inside the machines is, therefore, officially unknown. Zakhari contends the devices contain no images of child sexual abuse and that the government could not have seized the devices without persuading a judge that there was probable cause to believe they contained at least some evidence of criminal activity. Zakhari argues it would be wrong for either side to introduce such testimony and that making the existence of the devices known to the jury, but saying

nothing about the data stored in them, will invite the jurors to speculate about the nature of the "missing" evidence. *Id*.

In response, the United States represents that it "will not seek to introduce the Search Warrant or return for items seized from Zakhari's apartment.  However, the defense should be precluded from any argument or suggestion that the investigation was insufficient due to a failure to seize and search additional evidence because to do so would be misleading."  [DE 132 at 100-61].

    *b.  Analysis*

The Court agrees with Zakhari that it would be inappropriate for the United States to make known to the jury that the devices were seized without making known what was stored on them as it would raise a question and invite speculation.  But should the defense argue or suggest that the investigation was insufficient due to a failure to seize and search additional evidence, the United States would be permitted to introduce evidence of the other electronic devices that were seized. The parties essentially agreed to as much during the pretrial conference.  Accordingly, the Court **GRANTS** Zakhari's Motion *in Limine* to exclude proof that the government seized electronic devices – other than Zakhari's iPhone – that were seized as part of the investigation against Zakhari, so long as Zakhari does not argue that the United States' investigation was insufficient for failing to search these devices.

   3. Motion *in Limine* About Testimony Discussing the Kik Platform [DE 125]

Zakhari also moves *in limine* to exclude discussion of the prevalence of child exploitation on the social media app Kik.  [DE 125 at 979-80].

*a. Background*

The United States seeks to have Detective Hedden from testify about Kik and other social media platforms in the context of online undercover operations. [DE 132 at 1055]. The United States claims that Kik "is known for the anonymity provided to its users" and is exploited by persons who wish to "exploit children" and "meet[] with minors for sexual contact." [DE 125; DE 1 at 2-3].

Zakhari argues that "[i]t is impossible to determine the provenance or gauge the accuracy of these claims.  In our particular case, it makes no difference: the proof shows that Mr. Zakhari was not on Kik but MeetMe – an adults-only site1 – when he first encountered "Dani," a woman whose profile said she was eighteen and told interested men that "my Kik is Boredcrbgirl."  [DE 125].

The United States cites a number of sources arguing that "[c]ourts, law enforcement, training programs, and media regularly recognize the dangers posed by social medial platforms – singling out Kik as particularly dangerous." [DE 132].  The United States argues that this testimony about Kik will be helpful to the jury to understand how and why law enforcement engage in undercover online investigations and the platforms themselves. *Id*. In addition, the United States disputes Zakhari's version of the facts – that he initially saw Hedden's persona on the MeetMe app – and argues that "the suggestion that Detective Hedden's experience and knowledge of Kik and its role in the world of online child sexual exploitation is speculative" and ignores his relevant training.  [DE 132 at 1056].

*b. Analysis*

The issue of whether Zakhari first saw the persona's profile on MeetMe or Kik is for the jury to decide. "Zakhari's utilization of the Kik service" could be "probative of his belief

concerning 'boredcrbgirl''s age or of his intention when communicating with her." [DE 125 at 80-81]. But testimony by Detective Hedden that Kik has a reputation for being used by persons who wish to exploit children and minors for sexual contact and that such behavior is prevalent on Kik would be unfairly prejudicially to Zakhari under Fed. R. Evid. 403.  It could also constitute impermissible character evidence under Fed. R. Evid. 404(b).  Thus, the Court will not permit him to testify about Kik's reputation.  But given that Zakhari's indictment stems from Detective Hedden's undercover investigation on the Kik platform, Detective Hedden will be permitted to testify about what Kik is, how it works, and that he regularly investigates on Kik as well as other social media platforms.  Detective Hedden's testimony can be informative about Kik but Detective Hedden's rationale for creating a persona on Kik is not directly relevant to this case, such testimony may not imply that because someone uses Kik that they are likely seeking to exploit children, and it may not prejudicially imply that it is evidence of *Zakhari*'s beliefs or intentions based on his use of the Kik app.  Therefore, Zakhari's motion *in limine* about discussion of the Kik app is **GRANTED in part** and **DENIED in part** as set forth herein.

### III. CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

(1) The United States' Motions to Exclude Dr. Beggan [DE 113; DE 119][7] are **GRANTED in part** and **DENIED in part** as set forth above;

(2) The United States' Motions *In Limine* and to Exclude Testimony of Lisa Ream [DE 115; DE 117] are **DENIED**;

(3) The United States' Motion *in Limine* regarding penalties [DE 116][8] is **GRANTED**;

---

[7] In *Zakhari II*, DE 38 and DE 43 are **GRANTED in part** and **DENIED in part** as set forth above.
[8] In *Zakhari II*, DE 41 is **GRANTED**.

(4) Zakhari's Motion to Exclude Detective Hedden [DE 111][9] is **GRANTED in part** and **DENIED in part**;

(5) Zakhari's Motion *in Limine* to exclude discussion of other electronic devices [DE 125][10] is **GRANTED**;

(6) Zakhari's Motion *in Limine* about discussion of the Kik app [DE 125][11] is **GRANTED in part** and **DENIED in part** as set forth above;

(7) Zakhari's Motion for Leave to File a Supplement to His Response to the United States' motion regarding McDermott [DE 135] is **GRANTED** and his Supplement [DE 135-2] is accepted as filed;

(8) Zakhari is ordered to supplement McDermott's expert report as set forth in this opinion within 7 days of the entry of this order.

Rebecca Grady Jennings, District Judge
United States District Court

September 10, 2021

---

[9] In *Zakhari II*, DE 36 is **DENIED**.
[10] In *Zakhari II*, DE 50 is **GRANTED** as to discussion of other electronic devices.
[11] In *Zakhari II*, DE 50 is **GRANTED in part** and **DENIED in part** as set forth above as to discussion of the Kik platform.